Nathaniel Allen LINDELL, Plaintiff,

v.

Steven CASPERSON, Matthew Frank, Jon E. Litscher, Laura Wood, Gerald Berge, Peter Huibregtse, Gary Boughton, Vicki Sebastian, Cpt. Timothy Haines, Linda Hoddy, Cindy O'Donnell, Lt. Gardiner, Julie Biggar, Sgt. Hanke, Todd Overbo, Sandra Grondin, JoAnne Goviere (Jane Doe), Mike Vanderloh, Ron Koplitz, Ellen Ray, Gary McCaughtry, Marc Clements, Debra Tetzlaff, Cpt. Steve Schueler, C.O. Watson, Chaplain Francis, Byron Bartow, Kathleen Bellaire, and Steve Spanbauer, Defendants.

No. 02–C–473–C.

United States District Court,
W.D. Wisconsin.

March 16, 2005.

Nathaniel Lindell, pro se.

John J. Glinski, Assistant Attorney General, Madison, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for declaratory, injunctive and monetary relief, plaintiff Nathaniel Allen Lindell alleges that defendants Casperson, Frank, Litscher, Wood, Berge, Huibregtse, Boughton, Sebastian, Haines, Hoddy, O'Donnell, Gardiner, Biggar, Hanke, Overbo, Grondin, Goviere, Vanderloh, Koplitz, Ray, McCaughtry, Clements, Tetzlaff, Schueler, Gransell (f/k/a Watson), Francis, Bartow, Bellaire and Spandbauer violated his rights under the First and Fourteenth Amendments as well as under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc–2000cc–5. Jurisdiction is present. 28 U.S.C. § 1331.

In an order dated May 26, 2004, I allowed plaintiff to proceed on the following claims:

1) Defendant Biggar sought permission to force plaintiff out of his cell in retaliation for trying to sue her in Case No. 02–C–21–C;

2) Defendant Gransell wrote a false conduct report in retaliation for plaintiff threatening to file a complaint about making him leave Wicca services early and because she disapproved of plaintiff's religion, in violation of plaintiff's equal protection rights;

3) Defendants Hanke and Gardiner demoted plaintiff to level two at the Wisconsin Secure Program Facility in retaliation for his appealing conduct report # 1337893;

4) Defendant Goviere falsely accused plaintiff of throwing trash at her in retaliation for his complaining to defendant Haines about defendant Goviere's sexual harassment of him, leading to his demotion from level two from level three;

5) Defendants Bartow and Casperson prohibited plaintiff from acquiring texts and publications related to his religion, such as "The Masks of Odin," "The Rights of Odin," "Temple of Wotan," and "Creed of Iron" in violation of plaintiff's rights under the free exercise clause and the Religious Land Use and Institutionalized Persons Act;

6) Defendants Bartow, Berge, Sebastian, Overbo, Wood, Litscher and Casperson denied plaintiff's requests to practice Wotanism as a group in violation of plaintiff's rights under the free exercise clause and the Religious Land Use and Institutionalized Persons Act;

7) Defendants Berge, Litscher, Matthew Frank, Bartow and Cindy O'Donnell prohibited plaintiff from sharing order forms from Wotansvolk or other letters with in-

mates about the group practice of Wotanism in violation of plaintiff's rights under the free exercise clause and the Religious Land Use and Institutionalized Persons Act;

8) Defendants Berge, Litscher, Frank, Peter Huibregtse and O'Donnell prevented plaintiff from possessing various ritual and ceremonial items for religious purposes in violation of plaintiff's rights under the free exercise clause and the Religious Land Use and Institutionalized Persons Act;

9) Defendant Overbo, Huibregtse, O'Donnell and Frank prevented· plaintiff from ordering ceremonial items from the Orlog Press (such as holy day cards, ceremonial objects, spiral-bound publications and books) in violation of plaintiff's rights under the free exercise clause and the Religious Land Use and Institutionalized Persons Act;

10) Defendant McCaughtry prevented plaintiff from possessing any personal books and magazines except a Bible or Koran while in the Health and Segregation Complex at Waupun Correctional Institution in violation of plaintiff's rights under the free exercise clause and the Religious Land Use and Institutionalized Persons Act;

11) Defendants Hoddy and Overbo are requiring plaintiff to take a "Bible Anger Management" program at the Wisconsin Secure Program Facility in violation of plaintiff's rights under the free exercise clause and the Religious Land Use and Institutionalized Persons Act;

12) Defendants Berge, Sebastian, Huibregtse, Overbo and Wood are preventing plaintiff from eating foods in accordance with his religious beliefs in violation of plaintiff's rights under the free exercise clause and the Religious Land Use and Institutionalized Persons Act;

13) Defendants Casperson, Berge, Frank and O'Donnell are preventing plaintiff from possessing compact disc and audio tape players and recorders that would allow plaintiff to learn to speak languages essential to his religion in violation of plaintiff's rights under the Religious Land Use and Institutionalized Persons Act;

14) Defendants Grondin, Ray and O'Donnell violated plaintiff's free speech rights when they refused to deliver plaintiff's order form from Wotansvolk to another inmate at the Wisconsin Secure Program Facility;

15) Defendants Vonderloh and Spanbauer violated plaintiff's free speech rights when they refused to deliver his letters to inmates Sconce and Kittinger regarding a group complaint and not allowing the group practice of Wotanism at the Wisconsin Resource Center;

16) Defendants Overbo, Gary Boughton and Berge allow prisoners observing other religions to have rugs, caps, sweet grass and other property for their religions and to sell holiday cards for Christian and Jewish holidays but fail to provide plaintiff the same access to items for his religion, in violation of the equal protection clause of the Fourteenth Amendment;

17) Defendants McCaughtry, Clements, Litscher, Frank, Schueler, Tetzlaff, Francis, John Doe # 8 and Bellaire violated plaintiff's equal protection rights by providing inmates a Bible or Koran and refusing to provide plaintiff with his own religious texts;

18) Defendants Berge, Sebastian, Overbo, Wood and Huibregtse violated plaintiff's equal protection rights by not accommodating his religious dietary needs;

19) Defendants McCaughtry, Litscher and Frank prohibited plaintiff from possessing his religious texts while housed in the Health and Segregation Complex at Waupun Correctional Institution, while making a Bible, Koran and other Christian

books available to other inmates, in violation of the establishment clause;

20) Defendants McCaughtry, Berge, Boughton, Frank and Litscher violated the establishment clause when they prohibited plaintiff from corresponding with others about his religion while permitting Christian, Jewish or Muslim inmates to communicate with others about their religions; and

21) defendants Overbo and Hoddy encourage the practice of Judeo–Christian religion while discouraging the practice of plaintiff's religion by offering a Bible Anger Management program at the Wisconsin Secure Program Facility, in violation of the establishment clause.

Presently before the court are defendants' motion for summary judgment, plaintiff's motion for partial summary judgment and plaintiff's motions to strike the affidavits of Thomas DuBois, Thomas Laliberte, Christine Althaus and Catherine Farrey. I will deny each of plaintiff's motions to strike. I did not consider any of the facts supported by DuBois's affidavit. Plaintiff did not dispute any of the proposed facts supported by the Laliberte and Althaus affidavits except one: that Temple of Wotan contains a narrative describing mead and the recipe for brewing it. Dfts.' PFOF, dkt. # 97, ¶ 621. However, plaintiff's response to the proposed fact does not put the fact into dispute; rather, plaintiff states that "[m]ost inmates know already how to brew wine, mead etc." Dfts.' Reply to Plt.'s Resp. to Dfts.' PFOF, dkt. # 165, ¶ 621, at 89. Similarly, plaintiff agreed with most of the facts that I considered from the Farrey affidavit. The ones that he does dispute, such as proposed facts # 437, 478, 483, 514–516, 573, 575 and 584, are facts of which Farrey has personal knowledge. Plaintiff's response fails to demonstrate how he has the personal knowledge to disagree with her statements. Each of the facts proposed in reli-

ance on the Farrey affidavit relates to prison security and religious policies and experience in the prison setting. Farrey is competent to testify about these matters because of her experiences as a warden in various Department of Corrections institutions and as Deputy Director for the Division of Adult Institutions, her service on the Division of Adult Institutions Religious Practices Steering Committee and her continuing service as a consultant on religious issues for the Department of Corrections.

In deciding the parties' motions for summary judgment, I found a number of facts to be undisputed even though the opposing party attempted to put the proposed fact into dispute. For example, defendants proposed that all religious texts are obtained through donations from outside organizations. Dfts.' PFOF, dkt. # 97, ¶ 103. In response, plaintiff states that "WCI has in its free library a large assortment of Christian religious books." Dfts.' Reply to Plt.'s Resp. To Dfts.' PFOF, dkt. # 165, ¶ 103, at 15. This response does not put defendants' proposed fact into dispute. Similarly, plaintiff's responses to defendants' proposed facts # 217, 224, 297, 374, 379, 496, 514–517, 558, 559, 573, and 621 are insufficient to put them into dispute. In response to still other facts proposed by defendants, plaintiff cites his own affidavit to support his denial of the fact. However, plaintiff does not establish in his affidavit how he has personal knowledge of the matters to which he is attesting. For example, in proposed finding of fact # 478, defendants state that "[I]t is time consuming for staff to check each inmate's CD's or audio tapes as against the inmate's property list in the course of a cell search." In response, plaintiff states that "There is no need to check tapes/cd's against an inmates' property list during every cell-search." Plaintiff cites his own affidavit for support, but he has not shown how he has personal knowledge about prison ad-

ministration. Other facts that have a similar response from plaintiff include defendants' proposed facts # 437, 483, 575 and 584.

As for the parties' motions for summary judgment, I will grant defendants' motion as it relates to plaintiff's First Amendment and Religious Land Use and Institutionalized Persons Act claims # 1, 3 and 7 against Berge, Litscher, Frank, Bartow, Grondin, Ray, O'Donnell, Biggar, Hanke and Gardiner concerning a cell extraction incident, a retaliatory demotion incident and a Wotansvolk order form incident because plaintiff failed to exhaust his administrative remedies as to those claims. I will grant defendants' motion for summary judgment as it applies to plaintiff's free exercise, Religious Land Use and Institutionalized Persons Act and establishment clause claims # 11 and 21 against defendants Overbo and Hoddy concerning the Bible Anger Management class because plaintiff's claim is not ripe for review. I will grant defendant's motion for summary judgment regarding plaintiff's retaliation claim # 2 against defendant Gransell for asking plaintiff to leave Wicca services early because plaintiff has adduced no evidence that Gransell's action was retaliatory. However, I will deny defendants' motions for summary judgment insofar as they relate to whether defendants Goviere and Haines demoted plaintiff from level 3 to level 2 at the Wisconsin Secure Program Facility in retaliation for plaintiff's complaint to Haines that Goviere was sexually harassing him because material facts remain in dispute (claim # 4).

I will grant defendants' motion for summary judgment as to plaintiff's free exercise and Religious Land Use and Institutionalized Persons Act claims # 6, 8, 9, 12 and 13 against defendants Bartow, Berge, Sebastian, Overbo, Wood, Litscher, Casperson, Frank, Huibregtse and O'Donnell relating to plaintiff's requests for group practice of Wotanism, a special diet, ordering items from the Orlog Press and possessing religious ceremonial items and CD and tape players because defendants' refusal to accommodate these religious requests does not substantially burden plaintiff's sincere religious beliefs. I will grant defendants' motion for summary judgment as it relates to plaintiff's claims # 5 and 10 that defendants Bartow, Casperson, McCaughtry, Frank and Litscher violated his rights under the free exercise clause and the Religious Land Use and Institutionalized Persons Act when they denied his requests for religious texts because denying those requests furthers a compelling governmental interest and is the least restrictive means in achieving that interest.

I will grant defendants' motion for summary judgment as it relates to plaintiff's free speech claim # 15 against defendants Vonderloh and Spanbauer because plaintiff fails to propose any facts to show that defendants had an illegitimate reason for refusing to deliver his letters to other inmates. I will grant defendants' motion for summary judgment as it applies to plaintiff's claim # 19 that defendants McCaughtry, Litscher and Frank violated his rights under the establishment clause when they prohibited him from possessing Asatru books while in segregation at Waupun Correctional Institution because the undisputed evidence shows that defendants' book policy gives equal treatment to all religions, has a secular purpose, does not advance or inhibit religion and does not foster excessive entanglement between the prison and religion. Because plaintiff fails to adduce any evidence showing how defendants Berge, Boughton and Frank prohibited him from corresponding with others about Wotanism and allowed inmates of other religions to participate in such correspondence, I will grant defendants'

motion as it relates to this establishment clause claim.

I will grant defendants' motion for summary judgment regarding plaintiff's equal protection claim # 17 alleging that defendants McCaughtry, Clements, Litscher, Frank, Schueler, Tetzlaff, Francis, John Doe # 8 and Bellaire denied him religious texts but provided a Bible or Koran to inmates because plaintiff's religion has no holy book and because plaintiff fails to adduce any evidence showing that defendants would have denied him a holy book had one existed for his religion. In addition, I will grant defendants' motion for summary judgment as it relates to plaintiff's equal protection claims ## 16 and 18 against defendants Overbo, Boughton, Berge Sebastian, Wood and Huibregtse for allowing inmates of other religions to possess certain religious items and have a special diet but not making such accommodations for plaintiff's religion at the Wisconsin Secure Program Facility because I find that plaintiff's requests for religious items and a special diet are not founded on a sincere religious belief.

From the parties' proposed facts and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. *The Parties*

The following defendants work at the Wisconsin Secure Program Facility in Boscobel, Wisconsin: a) Gerald Berge, Warden; b) Julie Biggar, Supervising Officer; c) Gary Boughton, Security Director; d) David Gardiner, Supervising Officer; e) Joanne Goviere, Correctional Officer; f) Sandra Grondin, Correctional Officer; g) Timothy Haines, Unit Manager; h) Thomas Hanke, Correctional Sergeant; i) Peter Huibregtse, Deputy Warden; j) Todd Overbo, Chaplain; k) Ellen Ray, Inmate Complaint Examiner; and l) Vicki Sebastian, Corrections Program Supervisor. (I

note that neither party proposed facts regarding defendant Linda Hoddy's position at the Department of Corrections.)

The following defendants work or did work for the Wisconsin Department of Corrections: a) Matthew Frank, Secretary; b) Jon Litscher, former Secretary; c) Steven Casperson, Administrator of the Department of Adult Institutions; d) Cindy O'Donnell, Deputy Secretary; e) John Ray, Corrections Complaint Examiner; and f) Laura Wood, Division of Adult Institutions Religious Policy Advisor and Coordinator.

The following defendants work for the Wisconsin Resource Center in Winnebago, Wisconsin: a) Byron Bartow, Director; b) Kathleen Bellaire, Institution Supervisor; c) Michael Vonderloh, Correctional Sergeant; and d) Steven Spanbauer, Institution Complaint Examiner.

The following defendants work at the Waupun Correctional Institution in Waupun, Wisconsin: a) Marc Clements, Corrections Security Director; b) Gary McCaughtry, Warden; c) Debra Tetzlaff, Supervisory Officer; d) Erika Gransell (formerly Erika Watson), Correctional Officer; and Steven Schueler, Supervisory Officer. Finally, defendant Ronald Koplitz is a chaplain for the Wisconsin Department of Health and Family Services.

Plaintiff Nathaniel Lindell is a prisoner currently confined at the Wisconsin Secure Program Facility. He was confined at the Waupun Correctional Institution from March 30, 1998 through February 27, 2001, and resided at the Wisconsin Resource Center from May 21, 2002 through July 8, 2002. Plaintiff is an admitted white supremacist whose racist views have been a factor in physical altercations with other inmates. Plaintiff views white supremacy as simply being the best that he can be and not hating anyone because of their race. Plaintiff presents an extreme securi-

ty risk within the Wisconsin Department of Corrections Division of Adult Institutions to anyone who dishonors him. Plaintiff has physically fought with staff. He has never been part of a hate group. He respects the rights of others to do as they wish so long as they do not interfere with his beliefs and lifestyle.

### B. *Plaintiff's Religious Preferences*

In a memorandum to Waupun Correctional Institution authorities in November, 2000, plaintiff described himself as an "Asatru Pagan." In a religious preference form dated March 26, 2001, plaintiff describes his religious affiliation as "Wicca. I'm a Pagan, specifically Wotanist but want to see how the Wiccan group is done, as it's closest to my religion." At other times, plaintiff has described his religion as "Odinism–Wotanism," or "Asatru/Odinism/Wotanism." Plaintiff believes that Bibles, Torahs and Korans should be burned as they are texts that inspired anti-Pagan hate crimes and the slaughter of millions of Pagans and inspire defendants to oppress his religion. The Bible specifically commands the slaughter of Pagans and their worship areas and commands that homosexuals be killed. However, plaintiff believes that everyone should be able to practice their religion, even if it is sickening or hateful toward Wotanism.

#### 1. *Religious texts*

Plaintiff's religion does not have one holy book with all the writing essential to the religion like the Bible or Koran, but relies on many different books, including "The Poettic Edda," "FUTHARK," "Temple of Wotan," "Creed of Iron," "The Masks of Odin," "The Rites of Odin," among others. These books contain writings inspired by plaintiff's gods and goddesses, ethical teachings, directions on how to practice the ceremonies and rites of the religion and the meaning of components of the religion. Plaintiff believes that access to these writings is necessary if he is to communicate with his co-religionists and to practice and understand his religion. The Bible and Koran each contain multiple "books" with different stories and topics.

FUTHARK teaches the meaning and use of the Wotanic sacred language of Runes and some of the ethics of Wotanism that all Wotanists must understand. Runes are an ancient form of writing, consisting of angular characters, typically associated with Northern Europeans. "The Poettic Edda" and "The Masks of Odin" contain the Wotanist creation story, wisdom of the gods and goddesses and some of the religion's ethics. Every Wotanist that plaintiff has ever known agrees that study of these texts is a prerequisite to practicing the religion. The Creed of Iron and Temple of Wotan contain statements that advocate racial purity. The Creed of Iron shows a swastika on at least six of its pages, Thor's Hammer on at least 13 pages and contains a 15–page description of Runes. The Temple of Wotan shows the Celtic Cross throughout the book, a swastika on at least three pages. It contains a chapter devoted to Runes and a drawing of a shield with the number 14 at the center with "Words" projecting from and encircling the center, depicting the 14 Words "We must secure the existence of our people and a future for White children." In addition, the Temple of Wotan describes mead and the recipe for brewing it.

#### 2. *Groups, music and property*

Plaintiff believes that his religion requires him to study and practice its rites and ceremonies as a group and correspond with others about Wotanism; it prohibits him from taking any program based on the Bible, Christianity or any religion other than his own; and teaches self-control and anger management.

Music is crucial to plaintiff's religion. Music is one of the methods of using the Runes, the sacred metaphysical language of Wotanism created by the chief god Wotan. Music is a method for understanding and relating to plaintiff's gods and goddesses and it is the only method for expressing the joy and pleasure derived from properly practicing the religion.

Plaintiff believes that his religion requires possession of the following property in his cell in order to practice his religious beliefs on a daily and individual basis: a) a Thor's hammer pendant, made of metal and stone on a chain or hide cord; b) a stone or metal cup or horn; c) a 25″ by 25″ silk alter cloth; d) a set of Runes made of bone, horn, metal stone or wood; e) yellow apples, yew sprig, honey, walnuts, cheese and boar flesh on holy days; and f) a hide bag in which to store these items so that only plaintiff touches them.

3. *Religious diet*

Plaintiff believes that his general religious dietary needs are: a) being served food that contains no man-made substances such as hydrogenated vegetable oil, food coloring or preservatives; b) being served only food that is raised, processed and served organically, including free range raised meat, poultry and fish; c) being served foods that contain no refined or bleached carbohydrates, such as white flour, instant potatoes or noodles; d) being served foods that contain no spices; e) being supplied with certain spices, such as garlic; f) being served no refined sugars but only honey or other natural sweeteners; g) being served boar, goat or horse flesh, walnuts and cheese for holy days; h) being provided milk from cows that are not treated with bovine growth hormone; and i) having mead for holy days and rites. Plaintiff requires these dietary accommodations because of his core religious belief that life comes from his goddess earth/frigga and one should eat food in an unaltered natural state. In addition, spices, pork, horse flesh, walnuts, apples, honey mead and cheese have magical and spiritual force.

Plaintiff believes that his religion requires him to eat the following foods on the following fifteen holy days in order to honor his Pantheon:

- January 18, Thorrohlot—goat flesh, garlic, cheese, honey, mead, golden apples, bread and walnuts;
- February 14, Feast of Vali—pork, garlic, cheese, honey, mead, golden apples, walnuts, bread;
- March 21, High Feast of Ostora—pork, horse, garlic, cheese, honey, mead, golden apples, bread, walnuts;
- April 21, Sigurd Day—pork, goat, garlic, cheese, honey, mead, golden apples, walnuts, bread;
- May 1, May Day—pork, goat, garlic, cheese, honey, mead, golden apples, walnuts, bread;
- May 24, Merry Moon—pork, goat, garlic, cheese, honey, mead, golden apples, walnuts, bread;
- June 21, Midsummer—horse, garlic, cheese, honey, mead, golden apples, walnuts;
- July 4, Founder's Day—goat, garlic, cheese, honey, mead, golden apples, walnuts;
- August 23, Frey Faxi—goat, pork, garlic, cheese, honey, mead, golden apples, walnuts;
- September 21, Winter Finding Nights—horse, garlic, cheese, honey, bread, mead, golden apples, walnuts;
- October 17, Winter Nights—pork, goat, cheese, garlic, bread, honey, mead, walnuts, golden apples;
- November 11, Finejar Day—horse, pork, cheese, garlic, bread, honey, mead, walnuts, golden apples;

- November 27, Feast of Ullr—horse, goat, cheese, garlic, bread, honey, mead, walnuts, golden apples;
- December 21, Mother's Night—goat, pork, horse, cheese, garlic, mead, honey, bread, walnuts, golden apples;
- December 31, Twelfth Night—goat, pork, horse, cheese, garlic, mead, honey, bread, walnuts, golden apples.

Defendants can obtain the foods that plaintiff needs for his religious purposes for a nominal amount from such stores as The People's Food Co-op in La Crosse, Wisconsin, Whole Foods Market in Madison, Wisconsin or through the Internet.

## C. Plaintiff's Request for New Religious Practice

In January 2002, plaintiff sent defendant Wood a form DOC 2075 request for a new religious practice concerning the practice of Wotanism. Plaintiff's proposed group would have bylaws that establish functionary positions, such as a lawgiver. Under the proposed bylaws, plaintiff would be the lawgiver. He would require participants to obey prison rules and laws and improve and educate themselves and their loved ones. Plaintiff stated in his request that his group would recognize and adopt the 88 Precepts as laws of the religion and that the 88 Precepts could be obtained from Wotansvolk or 14 Word Press. The 88 Precepts include language that advocates racial and ethnic purity. Allowing a group that would be governed by the 88 Precepts would violate defendants' Internal Management Procedure # 6, which forbids activities that advocate racial or ethnic supremacy or purity or that attacks a racial, religious or ethnic group or promotes hate crimes or jeopardizes the security and order of the institution.

In his request for a new religious practice, plaintiff requested at least 50 different ritual or ceremonial items for the proposed Wotanist group. Many of the requested items are costly, such as gold, silver, iron, horn medallions, pendants, rings, a temple to contain statues of deities, religious tapestries and paintings, books, goats, boars, horses, chickens and other animals for sacrifice and ceremonial feasts, silk cords and an altar. In addition, plaintiff requested that his religious group members wear clothing of a substance and color, "appropriate for the group services and rituals held, as well as daily living and personal rights." Plaintiff requested conjugal visits with women "for purposes of sexual magic and divination." Plaintiff wrote that his proposed group needs to hold rituals on holy days and needs special foods for ritual feasts. Plaintiff listed 43 holy days that would be celebrated by his proposed group.

In reviewing plaintiff's request, Religious Policy Advisor and Coordinator Wood used the internet as a reference tool. In addition, she used information she received at a Wisconsin Correctional Association conference on prison gang activity, specifically the use of religion as a guise for disruptive gangs.

Wood read one article, written by David Lane and found on the website, www.whiterevolution.com, that describes "Wotanism (Odinism)" as promoting white supremacy or hatred toward other races. For example, Lane states that "the whole reason for the project [referring to Wotanism] was to stop the forced mixing and murder of the white race. So it had to be true to natural law, the highest law of nature being the preservation of one's own kind." The article encourages the use of force to advance these views, stating: "The fact is, the Creator made lions to eat lambs, wolves to eat fawns, hawks to eat sparrows, and the races of men to fight for life, women, food, territory and power. There is no love love love!! There is just law law law!! Harsh, sometimes cruel,

but still divine law!!" The article states that "WOTAN" is an acronym for "Will of the Aryan Nation" and that the whole reason for the "project" was to stop the forced mixing and murder of the white race.

Another website reviewed by Wood, www.pyramidprophecy.net, included the "88 Precepts," that plaintiff mentioned repeatedly in his DOC–2075 request. The 88 Precepts advocate notions of racial or ethnic purity. Wood used the information about the ideology of Wotanism to recommend to Warden Berge that plaintiff's request be denied. She wrote, "Request is denied. Linked to hate groups, extremist groups and convicted felon David Lane." Chaplain Overbo, Program Supervisor Sebastian and Berge concurred with Wood's decision. Department of Corrections Deputy Secretary O'Donnell dismissed plaintiff's complaints about not being able to practice Wotanism as a group on March 6, 2002 and May 17, 2001.

In June 2002, plaintiff sent Director Bartow a request, similar to his January 2002 request to defendant Wood, for a new religious group and practice at the Wisconsin Resource Center. Plaintiff asked for at least 35 different ritual or ceremonial items for the proposed Wotanist group. He requested also that staff not contaminate his religious objects by touching them. Bartow wrote defendant Wood, asking her for advice on responding to plaintiff's request. Wood recommended to Bartow that he deny plaintiff's request, which he did. On August 4, 2002, plaintiff filed an inmate complaint concerning the denial. The institution complaint examiner rejected the complaint because plaintiff had been transferred to the Wisconsin Secure Program Facility on July 9, 2002, making the complaint moot. None of the defendants ever discussed with plaintiff whether his proposed Wotanist group was related to any hate group or gang or whether the proposed group had any other non-religious purpose.

The number and types of religious practices requested by plaintiff pose significant security risks and administrative burdens.

D. *Defendants' Policies and Practices*

Inmates may correspond with other inmates and other individuals about Christianity, Islam or any other subject so long as the correspondence complies with the standards of the Wisconsin Administrative Code and applicable institution policies and procedures. Defendants obtain all religious texts through donations from outside organizations. The chaplains distribute them to the inmates upon request. Inmates may also purchase their own literature. However, defendants will review any publications to insure that they are in compliance with Wis. Admin. Code § DOC 309.05(2), IMP 6 and IMP 6A. For example, if plaintiff wanted to purchase his own religious texts, he could do so on the condition that the publication is subject to review under normal property procedures. His possession of any publication that violated these procedures would be denied. The Wisconsin Department of Corrections has a ban on the "Temple of Wotan" and "Creed of Iron."

It is imperative that prison staff be able to supervise all inmate activities, including religious activities, at all times and in all places. Any gathering of inmates implicates basic security issues and concerns. Defendants have had problems with gangs attempting to take over religious groups and then having the religious group become a cover for gang activity. In addition, some inmates express interest in many religions so that they can attend various religious feasts. Defendants have had problems with inmates demanding special foods with questionable religious significance, such as coconut cream pie. Prison staff must search for contraband in

all areas used by inmates, including areas where religious activities occur. Supervising, arranging and finding appropriate space to allow conjugal visits would be administratively burdensome and pose security risks. Allowing a religious group in the prison setting that advocates racial purity would run the risk of creating a perception among minority inmates, staff, visitors and members of the public that defendants endorse such unacceptable beliefs.

Inmates are responsible for purchasing their own religious property items at their own expense. Available space requires that limits be set on the quantity of allowable property. At the Wisconsin Secure Program Facility, all inmates are single-celled in cells designed to hold only limited amounts of personal property. Inmates may acquire personal property by purchasing it from the institution canteen, purchasing it from approved retail outlets, receiving it as gifts from friends and relatives during visits or other methods approved by the institution. These methods help prevent the introduction of contraband in the institution. Contraband includes: a) any item that inmates may not possess or is not authorized by the institution; b) any item that is not state property and is on the institution grounds but not in the possession of any person; c) any allowable item that comes into an inmate's possession through unauthorized channels or that is not on the inmate's property list and is required to be; d) stolen property; e) property that is damaged or altered; and f) anything used as evidence for a disciplinary hearing deemed contraband by the adjustment committee or hearing officer. Items sent to inmates from an outside vendor must be new and in a sealed package, so as to reduce the opportunities for individuals to conceal contraband in the items. Inmates at any Department of Corrections institution are prohibited from possessing cassette and CD players.

Inmates at the Wisconsin Secure Program Facility may possess the following types of religious property: a) Buddhists may possess religious texts and Mala beads; b) Islamic inmates may possess religious texts, a kufi cap, a prayer rug and prayer beads; c) Jewish inmates may possess religious texts and a yarmulke; d) Native American inmates may possess religious texts and sweet grass (2 inches in length); e) Protestant inmates may possess religious texts; and f) Wiccan inmates may possess religious texts. Warden Berge, Security Director Boughton and Chaplain Overbo approved the policy that permits inmates at the Wisconsin Secure Program Facility to possess items appropriate to their religions. The Wisconsin Secure Program Facility does not allow any congregate services because of the segregated status of its inmates.

While in segregation at Waupun Correctional Institution, inmates may possess holy books, such as one Bible, Koran or equivalent religious book. Books are made available to inmates every Sunday and are limited to those maintained by the institution library. All religious texts are obtained through donations from outside organizations and distributed by the chaplains to the inmates upon request. The religious faith that plaintiff claimed during his time in segregation at Waupun Correctional Institution (Asatru) does not have a recognized "holy book" that would be considered a religious book equivalent to the Bible or Koran. Waupun Correctional Institution has no books for Asatru, Odinism or Wotanism.

The chaplain at each institution reviews all requests for a religious diet. It is the policy of the Department of Corrections to make religious diets available through standard menu alternatives for inmates in Department of Corrections institutions whose religious beliefs require adherence

to religious dietary laws. Inmates at the Wisconsin Secure Program Facility have the following diet choices: a) the regular meal service; b) a self-select diet (where inmates choose what they want to eat off their meal tray); c) a kosher diet; d) a vegan diet; and e) special medical diets such as low sodium or low cholesterol diets. All Department of Corrections food services departments must work within their budgets and space constraints. The department's policy is to allow inmates of any religious group only one full religious feast per year.

Whenever mailroom staff at the Wisconsin Secure Program Facility receive material of a religious nature, defendant Grondin notifies the chaplain to review the material to determine whether the material is allowed under institution policy and procedure. Grondin notifies a gang and disruptive group coordinator to review material that has disruptive group or gang related language and is not religious in nature. If defendants find the material to be in accordance with institution policy, they will forward it to the intended receiver. If the material does not conform to institution policy or procedure, Grondin will fill out a Notice of Non–Delivery of Mail and forward it to the sender of the material.

Inmates wishing to request a new religious practice must submit form DOC 2075. This form is routed to Division of Adult Institutions Religious Policy Advisor and Coordinator Wood.

### E. *Retaliation*

#### 1. *Wicca service incident*

On March 16, 2000, defendant Gransell heard someone yelling loudly in the chapel during Wicca services. Gransell issued plaintiff conduct report 1147763–374 for disruptive conduct in violation of Wis. Admin. Code § DOC 303.28. In writing the conduct report, Gransell was not motivated by an intent to retaliate against plaintiff or punish him for exercising any of his constitutional rights.

#### 2. *Cell extraction incident*

On April 8, 2002, the Wisconsin Secure Program Facility was replacing all television sets on the unit in which plaintiff resided. Maintenance personnel needed entry into plaintiff's cell to replace his television, but plaintiff had refused movement from his cell unless defendants gave him his legal papers and insured his safety. Security Director Boughton authorized a cell extraction and had a team assembled for that purpose. The team approached plaintiff's cell front as a show of force. Supervising Officer Biggar gave plaintiff a direct order to come to the front of the cell to be restrained for transfer to another cell. Again, plaintiff refused to leave his cell unless defendants provided him with his legal papers and allowed him to be seen by clinical staff to insure his safety. The team leader gave plaintiff a direct order to come to the cell front to be restrained for transfer. Plaintiff refused the order. Under Biggar's direction, plaintiff's cell was opened by door control. Once defendants restrained plaintiff, plaintiff cooperated with a strip search and defendants placed him in a different cell without further incident. During the escort, plaintiff stated, "Next time if I don't get my legal property in two days or less, someone's going to get hurt around here." One officer reported a scratch under his chin and a scratch on his chest approximately 10 inches long. Plaintiff did not file an inmate complaint complaining that defendant Biggar had a retaliatory motive for performing the cell extraction.

#### 3. *Throwing trash incident*

No conduct report or incident report was issued to plaintiff for throwing trash

on September 17, 2003. (It is disputed whether plaintiff complained to defendant Haines that defendant Goviere sexually harassed him and in response to that complaint, defendant Goviere accused plaintiff of throwing trash at her. Plaintiff contends that he was demoted to level 2 at the Wisconsin Secure Program Facility because defendant Goviere falsely accused him of throwing trash in retaliation for his complaint to defendant Haines about Goviere's sexually harassing behavior.)

### 4. *Demotion to level two at the Wisconsin Secure Program Facility*

Plaintiff did not file an inmate complaint regarding his demotion to Level 2 by defendants Hanke and Gardiner allegedly in retaliation for his appealing conduct report # 1337893.

### F. *Wotansvolk incident*

On June 28, 2001, mailroom staff at the Wisconsin Secure Program Facility received a Wotansvolk order form that plaintiff was mailing to another inmate at the institution. The order form listed Wotanist books and religious items for sale by Wotansvolk. That same day, Correctional Officer Grondin issued a Notice of Non–Delivery of Mail to plaintiff, noting that the item contained contraband. Grondin wrote that plaintiff had five days to notify her if he planned to appeal the Notice of Non–Delivery to the Warden. Plaintiff never filed an appeal. Instead, plaintiff filed an inmate complaint about Grondin's refusal to deliver the order form. Complaint Examiner Ray rejected the complaint on July 16, 2001 for failing to follow appropriate appeal procedures and Deputy Secretary O'Donnell dismissed the complaint on August 18, 2001.

### G. *Mail Delivery at the Wisconsin Resource Center*

After mailroom staff collect outgoing mail, they monitor it for compliance with institution policy and procedure. On June 18, 2002, plaintiff tried to send two letters, one to inmate Sconce and another to inmate Kittinger. The letter to inmate Sconce enclosed a group inmate complaint that anticipated the denial of a Wotanist group request to Wisconsin Resource Center officials. The letter to Sconce stated "A friend will be sending you a copy of our religious group request—it's obviously going to be denied. Sooo, I'm also enclosing the complaint I started to write on it— please sign it, then mail to Mr. Kittinger (also here). Then, I'll do the rest, if you're game, you can be on the suit with us and get $ and do some good." The letter to inmate Kittinger enclosed a copy of plaintiff's religious group request. Defendant Vonderloh issued two Notices of Non–Delivery of Mail to plaintiff. Vonderloh noted on both notices that the "items" contained contraband and concerned an activity that would violate the laws of Wisconsin, the United States or the Administrative Rules of the Wisconsin Department of Corrections. On July 15, 2002, defendant Spanbauer rejected plaintiff's complaint about not being able to send letters regarding Wotanism to Wisconsin Resource Center inmates. Defendants Huibregtse and O'Donnell dismissed plaintiff's complaint. Plaintiff's religious beliefs compel him to correspond with co-religionists such as inmates Sconce and Kittinger.

### H. *Bible Anger Management Program*

The Bible Anger Management program is available to inmates on Levels 4 and 5 at the Wisconsin Secure Program Facility. Chaplain Overbo facilitates the program and does not offer any Wotanist programs. Inmates may choose to participate in a secular anger management program. Plaintiff has never volunteered for the Bible Anger Management program. He has never been eligible for participation in the

group because he has never progressed beyond Level 3.

### I. Compact Disc and Audio Tape Players and Recorders

The Wisconsin Department of Corrections used to allow inmates to possess tape players and up to 25 tapes. Plaintiff has a tape player that is kept with his property. However, defendant Berge approved a policy denying all Wisconsin Secure Program Facility inmates access to compact disc and audio tape players and recorders. These items present security concerns. Tapes and CDs can fit under doors and therefore create a risk of inmate bartering, trading or strong-arming because inmates can use them to record staff and inmate conversations and because they can be used to hid contraband or as weapons. An inmate could sharpen a CD into a saw-blade that an inmate could conceal in his hand or pass to another cell. It is time consuming for staff to check each inmate's CDs or audio tapes against the inmate's property list in the course of a cell search and to listen to the tapes and CDs for prohibited content, such as violence, racial hatred or other criminal lifestyles.

On October 9, 2002, defendant Huibregtse recommended dismissal of a complaint plaintiff had filed after he had been denied permission to possess a CD or tape player and recorder. On October 27, 2002, defendant O'Donnell dismissed plaintiff's appeal of the dismissed complaint. Plaintiff needs a tape and CD player and recorder to create and learn music and so that he can create for distribution religious songs and teachings to his non-incarcerated co-religionists. In addition, he needs a tape and CD player and recorder to learn languages, such as Old Norse and German, that are essential to his religious ceremonies and rites. Old Norse and German are traditional languages for Asatru and Wotanists. They are the only ones that should be used to perform the rites and ceremo-

nies of plaintiff's religion. Before defendants issued their policy banning tape players, plaintiff learned the German language by listening to tapes. Plaintiff requires use of a CD or tape player and recorder at least 4 hours each day in order to engage in religious activities. In addition, plaintiff needs to possess, use and send out a reasonable number of tapes or CDs that contain religious material.

### J. Denial of Religious Documents at Waupun Correctional Institution

Supervising Officer Tetzlaff insures that inmates at the Waupun Correctional Institution are provided with the materials they need to practice their religion. Plaintiff filed several complaints regarding the denial of his religious texts in the Health Segregation Complex at Waupun Correctional Institution. Tetzlaff determined that Asatru followers have no holy book, only resource books. Therefore, Waupun Correctional Institution staff could not determine which book would be an "equivalent" religious book to the Bible or Koran. Supervising Officer Schueler denied plaintiff's request to be allowed his religious and other texts while in segregation on October 16, 2000, October 19, 2000 and February 19, 2001. Warden McCaughtry dismissed plaintiff's complaints on August 23, 1999, November 3, 2000, November 9, 2000 and December 5, 2000. Deputy Secretary O'Donnell dismissed plaintiff's appeals of complaints regarding denial of his religious texts on December 18, 2000, December 28, 2000, February 10, 2001 and December 14, 2001.

### K. Denial of Religious Texts at the Wisconsin Resource Center

The library at the Wisconsin Resource Center does not have any religious texts for plaintiff's religion, such as the Temple of Wotan, Creed of Iron, The Masks of Odin, the Rites of Odin or the Nine Doors of Midgard. However Bibles, Native

American texts and other religious texts are available to Wisconsin Resource Center inmates. On June 3, 2002, plaintiff filed a complaint concerning the lack of texts for his religion and the provision of Bibles to inmates. Defendant Bellaire dismissed plaintiff's complaint on June 21, 2002.

### L. *Orlog Press Incident*

Orlog Press sells greeting cards for plaintiff's religion, Rune cards and a religious spiral-bound calendar, all of which plaintiff's religious beliefs require him to have and use. Plaintiff filed a complaint, stating that on January 12, 2003, while he was at the Wisconsin Secure Program Facility, he asked to order items from the Orlog Press that contained nudity, were bound with spiraled plastic and were plastic coated paper. Chaplain Overbo is responsible for deciding what religious property is allowed at the Wisconsin Secure Program Facility. Deputy Warden Huibregtse and Deputy Secretary O'Donnell dismissed plaintiff's complaint and his appeal regarding his inability to order these items. The Wisconsin Secure Program Facility does not permit inmates to possess plastic spiral bound publications or Rune cards.

### M. *Religious Diet Requests*

On January 21, 2002, plaintiff filed a complaint about not receiving his religious diet, but Deputy Warden Huibregtse dismissed this complaint because other defendants refused to approve Wotanism as a religious group. In April 2002, plaintiff submitted a Religious Diet Interview Form to defendant Overbo. As part of his "Religious Dietary Needs" request, plaintiff asked for an individualized diet, including unspiced foods, filtered water, fresh preserves, a menu that lists all of the ingredients of the foods that he is served, substitute foods if the food he is served does not comply with his needs, an assortment of herbs, spices, oils, herbal teas and berries he can keep in his cell, which are not to be touched or contaminated by others. In addition, plaintiff asked to have an earthenware or metal bowl, mortar and spoon in his cell. Earthenware and metal bowls can be fashioned into weapons, as can mortars and spoons.

On August 10, 2003, plaintiff requested a vegetarian diet for religious purposes at the Wisconsin Secure Program Facility, stating that his dietary requirements are "more extensive than simply vegetarian, but I know you only accommodate vegetarian diets, so this will have to suffice." The request informs defendants that his diet prohibits non-organic food or chemical additives. Defendant Overbo approved plaintiff's request on August 15, 2003. Defendants provide plaintiff with a vegan diet with milk cartons on the side. Plaintiff's vegetarian diet violates his religious dietary needs because the beans served as a meat substitute are usually moldy, mildewy or otherwise rancid tasting and inedible. In addition, plaintiff is served margarine instead of plain vegetable oil in place of butter and he is served cereal, packaged foods and baked goods containing artificial ingredients, chemical additives, coloring and hydrogenated oils.

## OPINION

### A. *Failure to Exhaust*

Plaintiff was granted leave to proceed on 21 separate claims. Defendants argue that three of these claims must be dismissed for plaintiff's failure to exhaust his administrative remedies. The Court of Appeals for the Seventh Circuit has held that "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits." *Perez v. Wisconsin Dept. of Corrections,* 182 F.3d 532, 535 (7th Cir. 1999); *see also Massey v. Helman,* 196

F.3d 727, 733 (7th Cir.1999). The court of appeals has held also that "if a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim. The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures." *Massey,* 196 F.3d at 733.

Before inmates may begin a civil action, Wis. Admin. Code § DOC 310. 04 requires that they "file a complaint under s. DOC 310.09 or 310.10, receive a decision on the complaint under s. DOC 310.12, have an adverse decision reviewed under s. DOC 310.13, and be advised of the secretary's decision under s. DOC 310.14."

Defendants argue that plaintiff failed to exhaust his administrative remedies on his claims that 1) Supervising Officer Biggar sought permission to force plaintiff out of his cell in retaliation for plaintiff's trying to sue her in Case No. 02–C–21–C; 2) Correctional Sergeant Hanke and Correctional Officer Gardiner demoted plaintiff to level two at the Wisconsin Secure Program Facility in retaliation for his appealing conduct report # 1337893; 3) Warden Berge, Secretary Litscher, Secretary Frank, Director Bartow and Deputy Secretary O'Donnell prohibited plaintiff from distributing to other inmates order forms from Wotansvolk or letters about the group practice of Wotanism, in violation of plaintiff's rights under the free exercise clause and the Religious Land Use and Institutionalized Persons Act; and 4) defendants Grondin, Ray and O'Donnell violated plaintiff's free speech rights when they refused to deliver plaintiff's order form from Wotansvolk to another inmate at the Wisconsin Secure Program Facility.

■ It is undisputed that plaintiff did not file inmate complaints regarding defendant Biggar's alleged retaliatory motive behind the cell extraction or defendants Hanke's and Gardner's alleged retaliatory motive in demoting plaintiff to Level 2. Because filing an inmate complaint is a necessary step before filing a lawsuit and because plaintiff failed to follow this procedure with respect to these two claims, I will grant defendants' motion for summary judgment on these issues.

■ In addition, plaintiff alleged in his complaint that defendants Berge, Litscher, Frank, Bartow, Grondin, Ray and O'Donnell violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act when they prohibited him from distributing Wotansvolk order forms to other inmates. Wis. Admin. Code § DOC 309.04(4)(f) allows an inmate to appeal decisions regarding the non-delivery of mail to the warden. The undisputed facts show that defendant Grondin informed plaintiff that he had five days to notify her if he planned to appeal the notice of non-delivery to the warden and that plaintiff never filed such an appeal. Instead, he filed an inmate complaint that was rejected because he failed to follow proper appeal procedures regarding inmate mail. Plaintiff agrees that he did not follow the appeal procedure for notice of non-delivery of mail or file a proper inmate complaint. Therefore, defendants are entitled to summary judgment on plaintiff's claim that defendants violated his free speech and Religious Land Use and Institutionalized Persons Act rights by prohibiting him from distributing Wotansvolk order forms to other inmates.

## B. *Ripeness*

■ Defendants argue that plaintiff's claims ## 11 and 21 against Chaplain Overbo and defendant Hoddy regarding the Bible Anger Management program at the

Wisconsin Secure Program Facility fail because plaintiff has not been injured with regard to those claims. In other words, plaintiff's claim about the Bible Anger Management program is not ripe for review. *Texas v. United States,* 523 U.S. 296, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) ("A claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." ") (quoting *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)); *see also Illinois v. General Electric Co.,* 683 F.2d 206, 210 (7th Cir.1982) ("Article III has been understood to express a policy ... against rendering decisions that are either unnecessary to resolve a real dispute or unlikely to be made in a competent fashion.")

It is undisputed that the Bible Anger Management program is offered to inmates on levels 4 and 5 at the Wisconsin Secure Program Facility and that plaintiff has never had an opportunity to participate in the program because he has never progressed beyond Level 3. Therefore, plaintiff has not sustained any injury with regard to the program. I will grant defendants' motion for summary judgment as it applies to plaintiff's Bible Anger Management claim against defendants Overbo and Hoddy.

### C. *Retaliation*

■ A prison official who takes action in retaliation for a prisoner's exercise of a constitutional right may be liable to the prisoner for damages. *Babcock v. White,* 102 F.3d 267, 275 (7th Cir.1996). The official's action need not independently violate the Constitution, *id.;* otherwise lawful action "taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir.2000). *See also Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir.2000) ("[O]therwise permissible conduct can become impermissible when done for retaliatory reasons.") State officials may not take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future. Plaintiff has a constitutional right to file nonfrivolous lawsuits and to complain about prison conditions.

Plaintiff alleged in his complaint that Correctional Officer Gransell wrote a false conduct report in retaliation for plaintiff's threatening to file a complaint about her making him leave Wicca services early (claim # 2) and that Correctional Officer Goviere falsely accused plaintiff of throwing trash at her in retaliation for his complaining to Unit Manager Haines that Goviere had sexually harassed him (claim # 4).

■■ I will grant defendants' motion for summary judgment regarding Gransell's alleged retaliatory conduct. It is undisputed that Gransell wrote the conduct report for disruptive conduct after she heard someone yelling in the chapel during Wicca services on March 16, 2000 and plaintiff has not adduced any evidence to prove his assertion that the act was retaliatory. However, it is disputed whether defendants Goviere and Haines demoted plaintiff from level 3 to level 2 at the Wisconsin Secure Program Facility because plaintiff complained to Haines that Goviere was sexually harassing him. Therefore, I must deny defendant's motion for summary judgment regarding plaintiff's retaliation claim # 4. At trial, plaintiff will have to show by a preponderance of the evidence that he did complain about Goviere's sexually harassing behavior and that those complaints were a motivating factor in his demotion to level 2. *Spiegla v. Hull,* 371 F.3d 928, 941 (7th Cir.2004). "Once the plaintiff proves that an improp-

er purpose was a motivating factor, the burden shifts to the defendant ... to prove by a preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct." *Id.* at 943.

### D. *RLUIPA and the Free Exercise Clause*

The Religious Land Use and Institutionalized Persons Act prohibits governmental imposition of a "substantial burden on the religious exercise" of a prisoner, unless the defendant can show that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1. The free exercise clause protects persons from substantial government burdens on the exercise of their religion. *Hernandez v. Commissioner,* 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989).

#### 1. *RLUIPA*

##### a. Sincerity of beliefs

When Congress enacted the Religious Freedom Restoration Act, the precursor to RLUIPA, it recognized that the statute might encourage prisoners to bring "false religious claims that are actually attempts to gain special privileges or to disrupt prison life." *Ochs v. Thalacker,* 90 F.3d 293, 296 (8th Cir.1996); *Lindell,* 352 F.3d at 1110 (noting enactment of RLIUPA in wake of *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), which limited applicability of Religious Freedom Restoration Act). Under the Religious Freedom Restoration Act, it was important for an inmate to hold a *sincere* religious belief. The question is whether RLIUPA carried over that aspect of the earlier statute. Some courts believe that it did. They have incorporated the "sincerely held belief" language into RLIUPA's "substantial burden" prong. *See,*

*e.g., Grace United Methodist Church v. City of Cheyenne,* 235 F.Supp.2d 1186, 1194 (D.Wyo.2002) (citing *Wisconsin v. Yoder,* 406 U.S. 205, 215–19, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (under RLUIPA, substantial burden must affect *sincerely held* religious belief) (emphasis added)); *Guru Nanak Sikh Society of Yuba City v. County of Sutter,* 326 F.Supp.2d 1140, 1152 (E.D.Cal.2003) (under RLUIPA, government regulation does not impose substantial burden unless it compels action or inaction with respect to *sincerely* held belief) (emphasis added); *Coronel v. Paul,* 316 F.Supp.2d 868, 881 (D.Ariz.2004) ("The question under the RLUIPA's substantial burden prong, as this Court interprets it, is whether the state has prevented [the plaintiff] from engaging in conduct both important to him and motivated by *sincere* religious belief.") (Emphasis added).

I agree with the courts that have imported the sincere belief requirement into cases brought under RLIUPA. It makes no sense to say that a particular regulation imposes a burden of any kind, much less a substantial one, on a prisoner's exercise of his religion unless it is the prisoner's *sincere* beliefs that are at stake. If a prisoner is contending that he must have a plethora of apparently preposterous objects and opportunities in order to practice his religion and if his list of alleged necessities changes for no apparent reason, it is reasonable to infer that he is more interested in exercising his ability to tie up the courts and prison officials than in exercising his religion. Congress enacted RLIUPA to protect the rights of prisoners seeking to exercise their religious beliefs, not to protect prisoners who misuse the Act to make life as difficult as possible for their jailors. At the same time, "[c]ourts must be cautious in attempting to separate real from fictitious religious beliefs." *Ochs,* 90 F.3d at 296 (citing *Thomas v. Review Board of Indiana Employment Sec. Div.,* 450 U.S.

707, 713–16, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)).

Plaintiff uses many names to describe his religion, such as Wotanism, Asatru, Odinism, Pagan and Wiccan. The parties appear to focus on Wotanism as the primary title for plaintiff's religion. Wotanism is a religion. *See, e.g., Lindell v. McCallum,* 352 F.3d 1107, 1108 (7th Cir. 2003) ("Lindell claims to be a follower of Wotanism, which he also calls Odinism or Asatru and describes as a nature-based religion rooted in ancient Indo–European or 'Aryan' tribal culture. It is an obscure religion, but he didn't make it up." (citing J. Gordon Melton, *Encyclopedia of American Religions* 847–48 (4th ed.1994))). According to the Encyclopedia of American Religions, 4th ed. at 847–48, Wotanism or Odinism is "viewed as the oldest religion in the world" and was advocated by the now defunct Runic Society, which believed that the "Nordic Race is the 'Chosen Race of Nature'" and that religion is a personal matter, so there were no religious services, only festivals.

b.  Special foods, holy days, conjugal visits and special clothing

█  It is questionable whether all of plaintiff's requests arise from sincere beliefs. For example, it appears odd for plaintiff to proposed the formation of a Wotanist group, when the Runic Society believed that religion is a personal matter and opposed the idea of religious services. That, however, is not a matter that is necessary to determine. Of more concern is the inconsistent and ever-changing nature of plaintiff's requests for certain items and privileges. For example, plaintiff says that his religion requires him to keep certain items in his cell in order to practice his religion: a) a Thor's hammer pendant, made of metal and stone on a chain or hide cord; b) a stone or metal cup or horn; c) a 25″ by 25″ silk alter cloth; d) a set of Runes made of bone, horn, metal stone or wood; e) yellow apples, yew sprig, honey, walnuts, cheese and boar flesh on holy days; and f) a hide bag in which to store these items so that only plaintiff touches them. In one request for a new religious practice at the Wisconsin Secure Program Facility, plaintiff asked for at least 50 different ritual or ceremonial items for the proposed Wotanist group. By contrast, when he was at the Wisconsin Resource Center, he asked for only 35 different ritual or ceremonial items for the proposed group.

In his proposed findings of fact in this case, plaintiff listed 15 holy days requiring special foods. However, in the request he made to defendant Wood, asking for a new religious practice at the Wisconsin Secure Program Facility, he wrote that his proposed group needed to hold rituals on holy days and needed special foods for ritual feasts and he listed 43 holy days that would be celebrated by his proposed group. He says in this case that his religion requires a special diet, with one requirement being food that contains no spices. In April 2002 he submitted a Religious Diet Interview Form to defendant Overbo, asking for an individualized diet that included unspiced food, but asking in the same request for an assortment of herbs and spices to keep in his cell.

Plaintiff believes that spices, pork, horse flesh, walnuts, apples, honey, mead and cheese have magical and spiritual force, yet he made a request for a vegetarian diet that Chaplain Overbo approved in August 2003. In this case, he proposed as a fact that a vegetarian diet violates his religious dietary needs because the beans served as a meat substitute are usually moldy or mildewy or otherwise rancid tasting and inedible. He did not say that the vegetarian diet violates his religion because his religion requires him to eat meat, such as goats, boars, horses and chickens.

The discrepancies in plaintiff's requests convince me that plaintiff has no sincerely held belief that he cannot practice his religion unless he has certain foods and no others.

In the same vein, I cannot find that plaintiff has a sincerely held belief that his religion requires conjugal visits with women "for purposes of sexual magic and divination" or that it requires expensive trappings and clothing of a particular substance and color. These requests are frivolous.

c.  Tape and CD players and recorders

██  Plaintiff contends that he needs CD and tape players and recorders so that he can learn languages essential to the practice of his version of Wotanism. Defendants deny that prohibiting the possession of CD and tape players is a substantial burden on plaintiff's exercise of religion. Plaintiff's alleged religious requirement is the learning of certain languages such as Old Norse and German, not the possession of CD and tape players to learn those languages. He has proposed no facts to suggest that he cannot learn the languages through books. No reasonable jury could find that by prohibiting plaintiff from possessing a CD or tape player, defendants placed a substantial burden on the exercise of plaintiff's religion.

As the Court of Appeals for the Seventh Circuit has stated repeatedly, summary judgment is the "put up or shut up" moment in a lawsuit, and the failure of the plaintiff to show what evidence he has to convince a trier of fact to accept his version of the facts will result in summary judgment for the opposing party. Fed. R.Civ.P. 56(e); *Johnson v. Cambridge Industries, Inc.,* 325 F.3d 892, 901 (7th Cir. 2003); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Plaintiff has failed to meet his burden. Because so many of plaintiff's religious requirements appear idiosyncratic and inconsistent, no reasonable jury could conclude that his sincere religious beliefs are substantially burdened by defendants' refusal to accommodate his requests for the group practice of Wotanism, a special diet, items from the Orlog Press and religious ceremonial items and CD and tape players. Therefore, I will grant defendants' motion for summary judgment as to plaintiff's free exercise and Religious Land Use and Institutionalized Persons Act claims ## 6, 8, 9, 12 and 13.

2. *Compelling interest and least restrictive means*

Plaintiff seems more sincere when he argues that he needs to possess certain religious texts, such as the Temple of Wotan and Creed of Iron. It is undisputed that plaintiff believes his religion relies on many different books and that he must have access to these writings to communicate with his co-religionists and to practice and understand his religion. The Court of Appeals for the Seventh Circuit has held that "[w]here a district court has before it one who swears or (more likely) affirms that he sincerely and truthfully holds certain beliefs which comport with the general definition of religion, [it can be] comfortable [that] those beliefs represent his 'religion.'" *Fleischfresser v. Directors of School Dist. 200,* 15 F.3d 680, 687–88 (7th Cir.1994) (quoting *Welsh v. United States,* 398 U.S. 333, 340, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970)). Thus, even if I assume that the prohibition of certain religious texts substantially burdens plaintiff's exercise of his religion, the prohibition is allowable under the Act if it meets a compelling state interest. (Because defendants have a heavier burden under the Act than under the Constitution's free exercise

clause, I will consider plaintiff's statutory claims first. If defendants meet their burden under the act, they will meet the less stringent burden of showing that their conduct was reasonably related to a legitimate penological interest under the First Amendment.)

■ Plaintiff contends that defendants Bartow, Casperson and McCaughtry violated his rights under the First Amendment and RLUIPA when they prohibited him from acquiring or possessing religious texts while at the Wisconsin Resource Center and the health and segregation complex at the Waupun Correctional Institution (claims # 5 and # 10). Plaintiff did not propose any facts to show which specific texts he requested from defendants Bartow, Casperson, McCaughtry, Litscher and Frank. However, I assume that plaintiff requested the books that he believes his religion relies upon, including "The Poettic Edda," "FUTHARK," "Temple of Wotan," "Creed of Iron," "The Masks of Odin" and "The Rites of Odin." Defendants assert that they did not provide plaintiff access to these texts because of security concerns. Dfts.' Br., dkt. # 124, at 45. Plaintiff contends that although defendants banned his religious texts because they promote white supremacy, purity or violence, Plt.'s Br., dkt. # 156, at 17, defendants allow inmates access to the Bible and Koran, which promote murder.

■ "[P]rison security is a compelling state interest." *Sasnett v. Sullivan,* 91 F.3d 1018, 1023 (7th Cir.1996). A ban on religious texts or practices that promote racism serves a compelling interest, *Lindell v. McCallum,* 352 F.3d 1107, 1110 (7th Cir.2003) (Wisconsin prison authorities may demonstrate compelling interest in suppressing Wotanism if religion is racist), and is a "legitimately restrictive means" in furthering that interest. *United States v. Israel,* 317 F.3d 768, 772 (7th Cir.2003) (demanding convicted felon on parole to abstain from marijuana use is *legitimately* restrictive means for safeguarding compelling interest in preventing drug abuse) (emphasis added). In *Israel,* the court did not explore alternative means that would have balanced the interest in preventing drug abuse with plaintiff's religious practice. Rather, the court concluded that abstinence from drugs was a legitimate restrictive means in preventing plaintiff's drug abuse. Similarly, banning racist literature is a legitimate solution to defendants' security concerns about these items.

In *Borzych v. Frank,* 04–C–632–C, 2005 WL 318820 (February 8, 2005), I denied the plaintiff a preliminary injunction that would have required the defendants to provide the plaintiff copies of the books "THE NPKA Book of Botar," "Temple of Wotan" and "Creed of Iron" because in that case the defendant showed that those texts teach ideas of Aryan supremacy and advocate use of violence to that end. I found that the books contain symbols associated with white supremacist movements, including swastikas, Celtic crosses and Thor's hammer. In addition, I concluded that the mere fact that the New King James Bible describes acts of violence does not make it equivalent to the express advocation of inter-racial violence found in the three Odinist texts.

Like the plaintiff in *Borzych,* plaintiff desires access to the "Temple of Wotan" and "Creed of Iron," among other texts. It is undisputed that the "Creed of Iron" and "Temple of Wotan" contain statements that advocate racial purity. In addition, the Creed of Iron shows a swastika on at least six of its pages and Thor's Hammer on at least 13 pages. It contains a 15-page description of Runes. The "Temple of Wotan" shows the Celtic Cross throughout the book and a swastika on at least three pages. It has a chapter devoted to

Runes and a drawing of a shield with the number 14 at the center with "Words" projecting from and encircling the center, depicting the 14 Words, "We must secure the existence of our people and a future for White children." Because these texts promote ideas of Aryan supremacy and contain symbols associated with white supremacist movements, defendants have a compelling interest in banning these books.

Plaintiff argues that defendants should deny only those portions of religious texts that threaten security. Plt.'s Br., dkt. # 156, at 17. However, in *Borzych*, I concluded that an outright ban is likely the least restrictive means of meeting the compelling interest; allowing an inmate to possess the books at all would permit other inmates to observe plaintiff with these texts, assume that he is a white supremacist who advocates violence against them and act accordingly. It is undisputed that permitting a religious group that advocates racial purity to exist in the prison setting would create a perception among minority inmates, staff, visitors and members of the public that defendants endorse these repugnant beliefs. The same facts can apply to allowing plaintiff to possess his religious texts. Therefore, I will grant defendants' motion for summary judgment as it relates to plaintiff's claims that defendants Bartow, Casperson and McCaughtry violated his rights under the free exercise clause and the Religious Land Use and Institutionalized Persons Act when they denied his requests for religious texts (claims # 5 and # 10).

### E. *Free Speech*

Plaintiff argues that defendants Vonderloh and Spanbauer violated his free speech rights under the First Amendment when they refused to deliver two letters concerning Wotanism that plaintiff wrote to inmates Sconce and Kittinger (claim # 15). Prison officials violate the First Amendment when for reasons unrelated to legitimate penological interests, they engage in "censorship of ... expression of 'inflammatory political, racial, religious, or other views,' and matter deemed 'defamatory' or 'otherwise inappropriate.'" *Procunier v. Martinez*, 416 U.S. 396, 415, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). It is undisputed that defendant Vonderloh issued two Notices of Non–Delivery of Mail to plaintiff and noted on both that the letters contained contraband and concerned an activity which, if completed, would violate the laws of Wisconsin, the United States or the Administrative Rules of the Wisconsin Department of Corrections. On July 15, 2002, defendant Spanbauer rejected plaintiff's complaint about not being able to send letters regarding Wotanism to Wisconsin Resource Center inmates. Plaintiff fails to propose any facts that would suggest that defendants had an illegitimate reason for refusing to deliver the letters. Preventing contraband from entering a prison is a legitimate penological interest that justifies some intrusions on an inmate's First Amendment rights. *E.g., Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir.1986) (inspection of incoming mail for contraband); *see also* Wis. Admin. Code § DOC 309.04(4)(c)(3) (prohibiting prison staff from delivery of mail if it concerns sending contraband). Because plaintiff has not shown that it was error for defendants to refuse to deliver his letters, I will grant defendants' motion for summary judgment on plaintiff's free speech claim against defendants Vonderloh and Spanbauer.

### F. *Establishment Clause*

Plaintiff has two establishment clause claims. First, he argues that defendants McCaughtry, Litscher and Frank allowed only Christian and Muslim books in segregation at the Waupun Correctional Institution (claim # 19). Second, plaintiff

contends that defendants Berge, Boughton and Frank prohibited him from corresponding with other inmates about Wotanism but allowed inmates to correspond with one another about Christianity (claim # 20). (Plaintiff has voluntarily dismissed defendants McCaughtry and Litscher from this claim. Plt.'s Reply Br., dkt. # 156, at 31.)

The First Amendment to the United States Constitution prohibits Congress from enacting laws "respecting an establishment of religion." Although it is now well settled that the clause applies to any government action and not just to laws of Congress, *Glassroth v. Moore*, 335 F.3d 1282, 1294 (11th Cir.2003) (citing cases), the Supreme Court has struggled to give meaning to the establishment clause in a way that accurately reflects its purpose and does not clash with the protections of the free exercise clause of the First Amendment. In *Everson v. Board of Education*, 330 U.S. 1, 16, 67 S.Ct. 504, 91 L.Ed. 711 (1947), the Supreme Court adopted the view of Thomas Jefferson in concluding that the clause "was intended to erect 'a wall of separation' between church and State." In *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the Court adopted a more specific test in determining whether the government has violated the establishment clause: whether the government has acted with a sectarian purpose, whether the primary effect of the conduct is to advance or inhibit religion and whether the conduct fosters "an excessive government entanglement with religion." *Id.* Although the Court of Appeals for the Seventh Circuit continues to view the Lemon test as controlling, it has all but ignored the "excessive entanglement" portion of the test. *E.g., Books v. City of Elkhart*, 235 F.3d 292 (7th Cir.2000); *Freedom from Religion Foundation, Inc. v. City of Marshfield*, 203 F.3d 487 (7th Cir.2000); *Freedom from Religion Foundation, Inc. v.*

*Bugher*, 249 F.3d 606, 611 (7th Cir.2001) (citing *Agostini v. Felton*, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (entanglement prong of *Lemon* could be considered aspect of second prong's "effect" inquiry in school aid cases)).

The first prong of *Lemon* is not a good fit for plaintiff's claim. The acquisition, storage and distribution of religious texts has no secular purpose. Nevertheless, it is permissible under the Constitution when it is done in institutions in which religious adherents could not practice their religion without assistance by the government, as the court of appeals pointed out in *Johnson–Bey v. Lane*, 863 F.2d 1308, 1312 (7th Cir.1988):

> Patients in public hospitals, members of the armed forces in some circumstances (e.g., the crew of a ballistic missile submarine on duty)—and prisoners—have restricted or even no access to religious services unless government takes an active role in supplying those services. That role is not an interference with, but a precondition of, the free (or relatively free) exercise of religion by members of these groups. The religious establishments that result are minor and seem consistent with, and indeed required by, the overall purpose of the First Amendment's religion clauses, which is to promote *religious liberty*. Prisons are entitled to employ chaplains and need not employ chaplains of each and every faith to which prisoners might happen to subscribe, but may not discriminate against minority faiths except to the extent required by the exigencies of prison administration.

Plaintiff adduces no evidence to show that defendants' book policy for inmates in segregation at Waupun Correctional Institution favors one religion or another. It is undisputed that defendants allowed inmates to possess holy books, such as one

Bible, Koran or *equivalent religious book* for their religion. In addition, as defendants point out, it is undisputed that plaintiff's claimed religion at the Waupun Correctional Institution, Asatru, does not have a recognized "holy book" equivalent to the Bible or Koran. Finally, the books that inmates could have in segregation were obtained through donations from outside organizations and distributed by the chaplains to the inmates upon request. Plaintiff has no evidence to show that defendants solicited donations from one type of religion and not another. The fact that no outside organizations donated Asatru religious items does not show a preference by defendants for certain religions over others.

The undisputed evidence shows that defendants' book policy gives equal treatment to all religions and does not advance or inhibit religion in violation of the establishment clause. Therefore, I will grant defendants' motion for summary judgment as it applies to plaintiff's claim that defendants McCaughtry, Litscher and Frank violated his rights under the establishment clause when they prohibited him from possessing Asatru books while in segregation at Waupun Correctional Institution.

██ Plaintiff's second argument is meritless. He contends that defendants Berge, Boughton and Frank prohibited him from corresponding with others about his religion while allowing inmates of other religions to communicate about their religions. The rule that plaintiff challenges as violating the establishment clause is Wis. Admin. Code § DOC 303.20(3), which states that:

> Any inmate who participates in any activity with an inmate gang, as defined in s. DOC 303.02(1), or possesses any gang literature, creed, symbols or symbolisms is guilty of an offense. An inmate's possession of gang literature, creed symbols or symbolism is an act which shows

that the inmate violates the rule. Institution staff may determine on a case by case basis what constitutes an unsanctioned group activity.

Plaintiff contends that defendants used this rule to prohibit him from corresponding with others about Wotanism. Yet plaintiff offers no evidence to show that defendants Berge, Boughton or Frank prohibited him from corresponding with others about Wotanism or allowed other inmates to correspond about other religions on the basis of this rule. Plaintiff did not cite any admissible evidence to support his proposed fact that inmates can freely correspond about Christianity with others without being punished under § DOC 303.20(3). As noted earlier, summary judgment is the "put up or shut up" moment in a lawsuit, and a plaintiff's failure to show what evidence he has to convince a trier of fact to accept his version of the facts will result in summary judgment for the opposing party. Fed.R.Civ.P. 56(e); *Johnson,* 325 F.3d at 901; *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Electric Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. On its face, § DOC 303.20(3) is completely unrelated to a religious purpose. Therefore, I will deny plaintiff's motion and grant defendants' motion for summary judgment concerning this claim.

## G. *Equal Protection*

Plaintiff has three equal protection claims: 1) defendants McCaughtry, Clements, Litscher, Frank, Schueler, Tetzlaff, Francis, John Doe # 8 and Bellaire provided Bibles and Korans to inmates at the Waupun Correctional Institution and refused to provide him his own religious texts (claim # 17); 2) defendants Overbo, Boughton and Berge deny plaintiff access to items for his religion but allow inmates of other religions to have their religious property (claim # 16); and 3) defendants

958

Berge, Sebastian, Overbo, Wood and Huibregtse do not accommodate plaintiff's religious dietary needs but accommodate the diets of inmates who practice other religions (claim # 18).

■ The equal protection clause of the Fourteenth Amendment provides that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The denial of a privilege to adherents of one religion while granting it to others is discrimination on the basis of religion in violation of the equal protection clause of the Constitution. *Native American Council of Tribes*, 691 F.2d at 384, citing *Cooper v. Pate*, 382 F.2d 518, 522 (7th Cir.1967). However, not "every religious sect or group within a prison—however few in number—must have identical facilities or personnel." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Moreover, to show an equal protection violation, a plaintiff must demonstrate intentional or purposeful discrimination. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir.1982). In other words, a plaintiff must show that defendants "singled out a particular group for disparate treatment and selected [their] course of action at least in part for the purpose of causing its adverse effects on" Wotanists/Odinists. *Id.*

■ Defendants argue that they did not discriminate against plaintiff on the basis of his religious affiliation, which was Asatru during his stay at the Waupun Correctional Institution. As noted before, it is undisputed that defendants allowed inmates to possess holy books while in segregation, such as one Bible, Koran or *equivalent religious book* for their religion and that Asatru does not have a recognized "holy book" equivalent to the Bible or Koran. Plaintiff has not adduced any evidence showing that defendants would have denied plaintiff an Asatru holy book

had one existed. Rather, he attempts to argue that because his religion relies on many books and the Bible consists of many books, defendants should have allowed him to possess all the books he needed to practice his religion. Although the Bible may consist of many chapters or "books," these books are all bound together into one text. Plaintiff adduces no evidence showing that his religious books are bound into one text like the Bible. Because plaintiff's religion had no holy book and because plaintiff failed to adduce any evidence to show that defendants would have denied him a holy book had one existed for his religion, he has failed to show intentional or purposeful discrimination. Therefore, I will grant defendants' motion for summary judgment regarding plaintiff's equal protection claim against defendants McCaughtry, Clements, Litscher, Frank, Schueler, Tetzlaff, Francis, John Doe # 8 and Bellaire.

■ Plaintiff contends that because defendants Overbo, Boughton and Berge allow inmates of other religions to possess certain religious items but do not allow him to possess Wotanist property at the Wisconsin Secure Program Facility, defendants intentionally discriminate against his religion (claim # 16). In addition, plaintiff argues that defendants Berge, Sebastian, Overbo, Wood and Huibregtse denied his religious dietary requests because they were prejudiced against Wotanism (claim # 18). I have noted already the discrepancies in plaintiff's requests for religious items and a special diet that call into question the sincerity of plaintiff's religious beliefs. I have found that plaintiff's requests for religious items and a special diet are not founded on a sincere religious belief. For this reason, plaintiff is not similarly situated to inmates that are allowed to possess religious items and eat certain foods because of a sincere religious

belief. Hence, plaintiff does not state equal protection claims against defendants Overbo, Bought, Berge, Sebastian, Wood and Huibregtse and I will grant defendants' motion for summary judgment on those claims (claims # 16 and # 18).

## ORDER

IT IS ORDERED that the motion for summary judgment by defendants Jon Litscher, Matthew Frank, Steven Casperson, Laura Wood, Gary McCaughtry, Gerald Berge, Cindy O'Donnell, John Ray, Peter Huibregtse, Gary Boughton, Vicki Sebastian, Timothy Haines, Linda Hoddy, David Gardiner, Julie Biggar, Thomas Hanke, Todd Overbo, Sandra Grondin, Joanne Goviere, Mike Vanderloh, Ron Koplitz, Ellen Ray, Marc Clements, Debra Tetzlaff, Steve Schueler, Erika Gransell (f/k/a C.O. Watson), Chaplain Francis, Byron Bartow, Kathleen Bellaire and Steve Spanbauer is GRANTED as to the following claims by plaintiff Nathaniel Allen Lindell:

1) Defendants Berge, Litscher, Frank, Bartow and O'Donnell violated plaintiff's rights under the First Amendment and Religious Land Use and Institutionalized Persons Act when they prohibited plaintiff from distributing a Wotansvolk order form to other inmates;

2) Defendant Biggar retaliated against plaintiff when she sought permission to force him out of his cell;

3) Defendants Hanke and Gardiner demoted plaintiff to level two at the Wisconsin Secure Program Facility in retaliation for appealing a conduct report;

4) Defendants Overbo and Hoddy violated plaintiff's free exercise, Religious Land Use and Institutionalized Persons Act and establishment clause claims concerning the Bible Anger Management class;

5) Defendant Gransell violated plaintiff's equal protection rights when she asked him to leave Wicca services early;

6) Defendants Bartow, Berge, Sebastian, Overbo, Wood, Litscher, Casperson, Frank, Huibregtse and O'Donnell violated plaintiff's rights under the free exercise clause and Religious Land Use and Institutionalized Persons Act claims as those claims pertain to plaintiff's requests for group practice of Wotanism, a special diet and possession of religious ceremonial items;

7) Defendants Casperson, Berge, Frank and O'Donnell violated plaintiff's rights under the Religious Land Use and Institutionalized Act when they prevented him from possessing CDs and tape players;

8) Defendant Frank violated plaintiff's rights under the free exercise clause and the Religious Land Use and Institutionalized Persons Act by denying plaintiff permission to order items from the Orlog Press;

9) Defendants Bartow, Casperson, McCaughtry, Frank and Litscher violated plaintiff's rights under the free exercise clause and the Religious Land Use and Institutionalized Persons Act when they denied his requests for religious texts;

10) Defendants Vonderloh and Spanbauer violated plaintiff's free speech rights when they refused to deliver letters to inmates Sconce and Kittinger;

11) Defendants McCaughtry, Litscher and Frank violated plaintiff's rights under the establishment clause when they prohibited him from possessing Asatru books while in segregation at Waupun Correctional Institution;

12) Defendants Berge, Boughton and Frank prohibited plaintiff from corresponding with others about Wotanism and allowed inmates of other religions to participate in such correspondence in violation of the establishment clause;

13) Defendants McCaughtry, Clements, Litscher, Frank, Schueler, Tetzlaff, Fran-

cis, John Doe # 8 and Bellaire violated plaintiff's rights under the equal protection clause when they denied him his own religious texts but provided copies of the Bible or Koran to other inmates;

14) Defendants Overbo, Boughton and Berge violated plaintiff's equal protection rights when they allowed inmates of other religions to possess certain religious items but did not allow plaintiff to possess Wotanist property at the Wisconsin Secure Program Facility;

15) Defendants Berge, Sebastian, Overbo, Wood and Huibregtse violated plaintiff's equal protection rights when they failed to accommodate his religious dietary needs.

16) Defendants Overbo, Huibregtse and O'Donnell violated plaintiff's rights under the free exercise clause and Religious Land Use and Institutionalized Persons Act when they denied him the ability to order items from the Orlog Press.

FURTHER, IT IS ORDERED that defendants' motion for summary judgment and plaintiff's motion for summary judgment are DENIED as it relates to plaintiff's following claim:

17) Defendants Goviere and Haines demoted plaintiff from level 3 to level 2 at the Wisconsin Secure Program Facility in retaliation for plaintiff's complaining to Haines that Goviere was sexually harassing him;

18) Plaintiff's motions to strike the affidavits of Thomas DuBois, Thomas Laliberte, Christine Althaus and Catherine Farrey are DENIED;

19) Plaintiff's complaint is DISMISSED with respect to defendants Jon Litscher, Matthew Frank, Steven Casperson, Laura Wood, Gary McCaughtry, Gerald Berge, John Ray, Gary Boughton, Vicki Sebastian, Linda Hoddy, David Gardiner, Julie Biggar, Thomas Hanke, Sandra Grondin, Mike Vanderloh, Ron Koplitz, Ellen Ray,

Marc Clements, Debra Tetzlaff, Steve Schueler, Erika Gransell (f/k/a C.O. Watson), Chaplain Francis, Byron Bartow, Kathleen Bellaire, Todd Overbo, Peter Huibregtse, Cindy O'Donnell and Steve Spanbauer.